UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                 Plaintiff,

                                  CRIMINAL CASE NO. 05-50084

v.

ERIC DEWAYNE KIMBROUGH,            HONORABLE PAUL V. GADOLA
                                  U.S. DISTRICT COURT
                      Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Eric Dewayne Kimbrough is charged with one count of possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  Before the Court is Defendant's motion to suppress evidence, which was first filed on June 5, 2006.  A hearing on the motion was held on July 20, 2006, at which hearing Defendant withdrew his motion.

At a later hearing on October 18, 2006, Defense counsel requested this Court to reconsider the previously-withdrawn motion to suppress.  The Court granted the request, and held evidentiary hearings on the matter on October 30, 2006 and on December 6, 2006.  For the reasons stated below, the Court will deny the motion to suppress.

### I.    Background

On April 6, 2005, police stopped Defendant after he allegedly rolled through a stop sign without coming to complete stop.  Defendant denies committing any traffic violations and claims that he was driving with the utmost care.  After stopping Defendant and finding that Defendant's driver's license was suspended, police arrested Defendant.  Law enforcement subsequently discovered cocaine on Defendant's person.  Defendant was detained by police for some time at the

scene of the traffic stop and was later transported to his residence. After allegedly obtaining

Defendant's consent, law enforcement searched Defendant's residence and discovered more drugs,

a scale for drugs, and a shotgun. The government alleges that Defendant's consent to the search was

given both orally and by a written consent-to-search form prior to the search of the residence.

Defendant alleges in opposition that he did not give oral consent. Furthermore, though Defendant

acknowledges that he signed a consent-to-search form, Defendant claims that he signed this form

in the kitchen of his home after law enforcement had already searched the residence and discovered

contraband. Defendant seeks to suppress all the incriminating statements and evidence resulting

from the traffic stop and the search of Defendant's residence.

## II.      Analysis

In his motion to suppress evidence and statements, Defendant makes two arguments. First,

Defendant argues that the traffic stop was illegal because the police had no probable cause to support

the stop. Consequently, Defendant argues that all incriminating evidence and statements following

the traffic stop, including the contraband discovered during the search of Defendant's residence,

should be suppressed.

Defendant's second argument is that Defendant did not give free and voluntary consent to

the police to search his residence. Accordingly, Defendant argues that the incriminating evidence

discovered pursuant to the search of the residence should be suppressed.

In summary, there are two issues to be resolved: (1) whether the police had probable cause

to stop Defendant's vehicle for a traffic violation; and (2) whether the police obtained free and

voluntary consent from Defendant to search his residence. The parties agree that these issues are

factual instead of legal, as the parties do not dispute the governing standards and legal principles.

**A.      Whether the police had probable cause to stop Defendant's vehicle for a traffic violation**

In order to stop a vehicle for a traffic violation, the police must have probable cause. *See Whren v. United States*, 517 U.S. 806, 810 (1996). So long as an officer has probable cause to believe that a traffic violation has occurred, the resulting stop is not a violation of the Fourth Amendment even if it is pretextual. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). The motive of the police officer making the traffic stop is irrelevant. *Id.*

The government asserts that the police had probable cause to stop Defendant for a traffic violation because they observed Defendant failing to come to a complete stop at a stop sign. Defendant asserts in opposition that he did come to a complete stop at the stop sign, and thus, there was no probable cause for a traffic stop. Due to the conflicting testimony, the Court must now determine which account of the events that occurred on April 6, 2005 is more credible.

In assessing the credibility of witnesses appearing before it, the Court considers many factors. First, the Court considers the nature of the testimonial evidence, and in particular, the witness's power to clearly recall the facts of the situation, the witness's ability to respond to counsel's questions regarding the facts, and the overall consistency of the facts provided. Internal consistency as well as external consistency must also be evaluated, that is, the conjugation of one witness's account with that of another. Adding to the analysis, the Court must assess the elapsed time since the recalled events, the specificity with which the witness is called upon to describe the events, and the witness's motivation for the testimony. A determination of credibility is also affected by visual cues taken from the witness during testimony. The Court relies on the observations as to the witness's overall appearance and conduct. Such observations include, but are

not limited to, the witness's eye contact; facial, hand, and body movements; vocal inflection; and overall demeanor.

In support of the government's account of the events as they occurred on April 6, 2005, Trooper Dirkse testified that he observed Defendant in a vehicle proceeding westbound on Barrie Street as it approached the Euston Street intersection. Dirkse asserted that Defendant's vehicle did not come to a full and complete stop at the intersection with Euston Street, but rolled through the stop sign, and continued westbound on Barrie Street. Dirkse then engaged his overhead lights and proceeded with a traffic stop.

In contrast, Defendant testified that he came to a complete stop before proceeding through the intersection. Defendant asserted that he was familiar with the stop sign as it is close to his house, and that the stop sign is open and obvious. Defendant also argued that it was important to stop at the intersection because the Euston Street cross-traffic does not have a stop of its own. In addition, Defendant testified that he was driving in a particularly careful manner because he had drugs on his person, had a suspended driver's license, and did not want to be pulled over. Defendant further asserted that he always makes a complete stop at stop signs and never rolls through intersections.

Having considered all the testimony regarding the alleged traffic violation on April 6, 2005, the Court finds Trooper Dirkse to be a more credible witness than Defendant. The Court doubts the truthfulness of Defendant's testimony that he always comes to a complete stop at intersections and never rolls through stop signs. In addition, the Court notes that Defendant admitted during his testimony that he lied to police when they asked him about drugs at his home. *See* Transcript of October 30, 2006 hearing, pp. 62-63. Thus, Defendant has previously been untruthful to law

enforcement in an attempt to protect his interests.  Here, Defendant has much more incentive than

Trooper Dirkse to be untruthful on the question of whether Defendant stopped at the stop sign or not.

Accordingly, the Court finds that Dirkse's testimony is more credible than that of Defendant.

At the evidentiary hearing, Trooper Dirkse conceded that he was looking for an opportunity

to stop Defendant.  The Court notes that as long as a traffic violation occurred, the police are

permitted to make a traffic stop even if it is a mere pretext for another motive.  *See United States v.*

*Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).  Defendant argues that since Dirkse had a motive to stop

Defendant, then it is more likely that Dirkse is untruthful in claiming that a traffic violation

occurred.  The Court is not persuaded by this argument.  Since Dirkse was looking for a reason to

stop Defendant, the Court finds that it is just as likely that Dirkse followed Defendant and stopped

Defendant when a traffic violation occurred, instead of stopping Defendant when no violation had

occurred and lying about it later.

In conclusion, after having considered the testimonies of Defendant and Trooper Dirkse, the

Court finds Dirkse to be more credible and that it is likely that Defendant committed a traffic

violation by failing to come to a full and complete stop at the stop sign.  Consequently, the police

had probable cause to stop Defendant's vehicle.

**B.      Whether the police obtained free and voluntary consent from Defendant to search Defendant's residence**

"The Fourth Amendment generally prohibits the warrantless entry of a person's home,

whether to make an arrest or to search for specific objects.  The prohibition does not apply, however,

to situations in which voluntary consent has been obtained . . . from the individual whose property

is searched." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). Consent, however,

must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*

*v. Bustamonte*, 412 U.S. 218, 228 (1973). Instead, consent must be "freely and voluntarily given."

*Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). It is the government's burden to prove that

a valid consent was obtained and "that the consent was uncontaminated by duress, coercion, or

trickery." *United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981). "Whether consent was free and

voluntary so as to waive the warrant requirement of the Fourth Amendment is 'a question of fact to

be determined from the totality of all the circumstances.' " *United States v. Carter*, 378 F.3d 584,

587 (quoting *Schneckloth*, 412 U.S. at 227).

Whether Defendant gave free and voluntary oral consent to search his residence is an issue

of dispute between the parties. Defendant testified that he never gave oral consent, while the police

officers testified that Defendant did give oral consent. Thus, there is conflicting testimony on this

issue.

Whether Defendant gave free and voluntary consent to search his residence by means of a

written consent-to-search form is also an issue of dispute between the parties. The Court notes,

however, that it is undisputed that Defendant signed a consent-to-search form which stated that

Defendant willingly gave permission to law enforcement to search Defendant's house. The matter

of contention between the parties turns on when and where Defendant signed the consent-to-search

form. Defendant asserts that he signed the consent form in his kitchen, after the police had already

searched Defendant's home and discovered the contraband. The government asserts in opposition

that Defendant signed the consent form while in the driveway of Defendant's residence, immediately

before law enforcement began the search of Defendant's home.  Much of the dispute is derived from

inconsistencies in the timing of the events on April 6, 2005, and errors made by the police when

noting the time on certain reports and forms.

One of the documents contributing to the dispute is Trooper Pennell's incident report which

states that at approximately 1540 hours, Defendant left his house and was stopped for a traffic

violation a short time later.  Another document is a Flint Area Narcotics Group ("FANG") police

report that gives a detailed list of the seized property in Pennell's handwriting.  In the top corner is

the time of 1630 hours.  Finally, the consent-to-search form signed by Defendant contains a time of

1820 hours, written again in Pennell's handwriting.  If these times as noted on the documents are

taken as accurate, then consent to search was obtained at 6:20 p.m., almost two hours after the

property had been seized at 4:30 p.m.   This supports Defendant's argument that the time

discrepancies support a timeline of events that is contrary to that held by the government.

At the second evidentiary hearing held on December 6, 2006, in an attempt to explain the

time discrepancies on these forms, Pennell testified that he had made mistakes when recording the

time in a 24 hour format on his incident report and on the FANG report.  In particular, Pennell

testifed that he had incorrectly added a "1" in front of the actual time.  Thus, the time on his incident

report should have been 5:40 p.m. and not 1540, and the time on the FANG report should have been

6:30 p.m. and not 1630.  Pennell testified that the time as written on the consent-to-search form was

correct and that 1820 accurately signified a time of 6:20 pm.  Trooper Pennell testified that his

previous testimony on October 30, 2006 regarding the timeline of events was incorrect, as he had

not yet realized his mistakes in recording the time.  In support of this new version of the facts, the

government produced a computer record of communications that took place between the computer on Dirkse's patrol car and the Genessee County 9-1-1 Communications Center.  Showing the time accurately to the very second, this computer record indicates that Dirkse turned on his patrol car computer at 5:06 pm; that Dirkse entered Defendant's name for a LEIN check at 5:41 pm; that Dirske entered Defendant's license plate and vehicle registration at 6:18 pm; and that Dirkse entered "clear" at 6:19 pm, signalling that he was finished with the particular incident.  The government argues that Pennell's testimony that he mistakenly recorded the times on the police forms is consistent with the timeline of events as recorded in the computer record.

In addition, Trooper Pennell testified at the December 6, 2006 hearing that Defendant signed the consent form outside Defendant's residence in his driveway, immediately before the police and Defendant entered the house.  Pennell is one of two witnesses who signed the consent form.  Pennell also testified that no papers were signed by Defendant inside the house.  A second police officer, Officer Racosta testified that he was physically present when Defendant signed the consent form, and that Defendant signed the form when they were standing outside Defendant's house, immediately before they entered the home. Racosta was the second witness who signed Defendant's consent form.  A third witness, Lieutenant Rice, testified that though he did not actually observe Defendant sign the consent form, he was present when Defendant signed the form outside the residence immediately before the officers entered the house to begin the search.  Thus, each of the police officers unequivocally testified that the search did not begin until Defendant signed the consent form.

In opposition to this testimony, Defendant testified that he did not give oral or written consent to search at any time before law enforcement entered the residence.  Defendant testified that

8

he signed the consent form while in the kitchen of the residence and only after the police had entered the house, searched the residence, and found the contraband. Defendant testified that after the police searched the house, had brought the discovered contraband into the kitchen, and had taken pictures of all these items, the police produced two or three or four sheets of paper which Defendant signed.

Contrary to Defendant's testimony, there is no evidence that Defendant signed more than one sheet of paper. The police officers testified that Defendant signed only one document, namely the consent-to-search form, and did not sign any other piece of paper. The government has produced several documents that were completed on the day of the search, and only the consent-to-search form has Defendant's signature. The other documents such as the inventory report and forfeiture form have no spaces for Defendant's signature. Defendant's testimony that he signed multiple documents is not believable based on the available evidence.

Based on the totality of the circumstances and after weighing the testimonies and other evidence, the Court does not find Defendant's testimony that he signed the consent form in the kitchen of his home after law enforcement had searched the residence and discovered the contraband to be credible. The Court instead finds the testimonies of the police officers to be more convincing than that of Defendant. Therefore, the Court finds that Defendant signed the consent form while outside his residence before law enforcement entered the house. Contrary to the argument from Defendant's counsel, the uncertainty about the timeline of events due to Pennell's mistakes in recording the time does not raise an uncertainty sufficient to call into question the fact that Defendant signed the written consent-to-search form prior to entry into the residence. Consequently, the Court finds that the government has met its burden of showing that Defendant voluntarily gave clear and unequivocal consent to search his residence, prior to law enforcement

9

entering and searching Defendant's house.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress

[docket entry 22] is **DENIED**.

**SO ORDERED.**

Dated:   February 13, 2007                          s/Paul V. Gadola
                                                    HONORABLE PAUL V. GADOLA
                                                    UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   February 13, 2007 , I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system which will send notification of such filing to
the following:
                David A. Koelzer; James C. Mitchell                          , and I hereby
certify that I have mailed by United States Postal Service the paper to the following non-
ECF participants: _____.


                                                    s/Ruth A. Brissaud
                                                    Ruth A. Brissaud, Case Manager
                                                    (810) 341-7845

---